**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-22495-MOORE/Elfenbein

**JUAN VALDES**,

      Petitioner,

v.

**UNITED STATES OF AMERICA**,

      Respondent.

_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court on Petitioner Juan Valdes's ("Petitioner") Amended Petition for Writ of Error Coram Nobis (the "Amended Petition"), ECF No. [10]. Respondent, United States of America ("Respondent"), filed its Response to Juan Valdes's Amended Petition for Writ of Error Coram Nobis to Vacate His Conviction (the "Response"), ECF No. [12], opposing the relief he seeks. Petitioner subsequently filed his Reply in Support of Coram Nobis Relief (the "Reply"), ECF No. [15]. The Honorable K. Michael Moore referred the above-captioned matter to me "to take all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters." *See* ECF No. [16]. For the reasons explained below, I respectfully **RECOMMEND** that the Amended Petition, **ECF No. [10]**, be **DENIED**.

**I.     INTRODUCTION**

     **A.  Factual Background**

On September 30, 2014, Petitioner, a Cuban immigrant with lawful status, was arrested and charged on three counts relating to violation of the Federal Anti-kickback Statute. *See United*

*States v. Valdes*, Case No. 14-CR-20712-KMM-6 (hereinafter "CR") ECF No. [3] at 23; *see also* ECF No. [10-1] at ¶4.  On November 10, 2014, he pleaded guilty to Count Two, conspiracy to violate a federal anti-kickback statute, 42 U.S.C. § 1320a-7(b)(1)(B), all in violation of 18 U.S.C. § 371.[1]  *See* CR ECF No. [99]; ECF No. [12-1] at 37:8-11.  Petitioner was sentenced to 24 months in prison followed by a three-year term of supervised release.  *See* CR ECF No. [188] at 2-3; *see also* CR ECF No. [237] at 4:25-5:21.  Petitioner commenced his prison sentence on February 3, 2015 and thereafter commenced his term of supervised release on October 21, 2016.  *See* CR ECF No. [210] at 6; *see also* CR ECF No. [237] at 4:25-5:21; CR ECF No. [235] at 1.  After his release life seemingly returned to normal, until he attempted to apply for a green card in or around February 2025.  *See* ECF No. [10-1] at ¶¶16-19.  He now asserts that February 2025 is the first time he learned that the guilty plea he entered into a decade earlier carried deportation consequences requiring mandatory removal.  *See id*. at ¶¶19, 22-24.

### B.  Procedural History

#### 1.  The Petition for Writ of Error Coram Nobis

Against this factual backdrop, Petitioner filed a Petition for Writ of Error Coram Nobis (the "Original Petition") under 28 U.S.C. § 1651(a) (the All Writs Act) requesting the Court vacate his decade-old conviction on grounds of ineffective assistance of counsel. *See generally* ECF No. [1]. Much like the Amended Petition, Petitioner filed the Original Petition arguing that his former counsel committed ineffective assistance of counsel when he failed to warn Petitioner of the immigration consequences associated with entering into a guilty plea, including deportation. *See generally* ECF No. [1]. The Original Petition explained that counsel misguided Petitioner during the criminal case when counsel told Petitioner that accepting a guilty plea would be the only way

---

[1] In the plea agreement, the Government agreed to dismiss the remaining counts at sentencing. *See* CR ECF No. [94] at ¶1.

certain to avoid immigration consequences. *See id*. at ¶¶5-12. Petitioner insisted that he had no reason to question counsel's advice and that counsel never advised Petitioner to consult with an immigration attorney before pleading guilty. *See id*. at ¶13. For Petitioner, remaining in the United States with his family was of paramount importance and he claims to have made this clear to counsel. *See id*. at ¶16. In the Original Petition, Petitioner explains that he would not have accepted the plea had he known doing so would ensure his deportation and vanquish any chance at gaining status in the United States. *See id*. at ¶19. The Honorable K. Michael Moore dismissed the Original Petition without prejudice because, *inter alia*, it "largely ignored" the record and failed to address any potential implications addressed in the plea agreement, Report and Recommendation regarding the plea agreement, the presentence investigation report, the special conditions of supervised release, and the sentencing hearing. *See* ECF No. [6] at 3-6.

**2.   The Amended Petition for Writ of Error Coram Nobis**

Following the dismissal of the Original Petition, Petitioner filed the Amended Petition, arguing that he is entitled to relief because his counsel in the underlying criminal case, Sky Elliot Smith ("Mr. Smith"), provided constitutionally ineffective assistance of counsel when he[2] downplayed the immigration consequences associated with pleading guilty. *See* ECF No. [10] at 3, 16, 19. Petitioner first accuses Mr. Smith of providing false information and assurances that pleading guilty would avoid immigration consequences. *See id*. He argues that Mr. Smith had a duty to advise him that deportation was mandatory under the Immigration and Nationality Act ("INA") because Petitioner pleaded guilty to an aggravated felony and the consequence for doing so under the statute was mandatory removal. *See id*. at 14-15. According to Petitioner, he did not

---

[2] In the Amended Petition, Petitioner incorrectly describes Mr. Smith as an Assistant Federal Public Defender, when he, in fact, was private counsel appointed under the Criminal Justice Act. *See* CR ECF No. [59].

knowingly and voluntarily plead guilty because of his misunderstanding of immigration law. *See* ECF No. [10] at 8. Because of this, Petitioner argues that Mr. Smith's incorrect advice and Petitioner's misunderstanding of the law colored his acknowledgements that he understood the plea agreement. *See id*. at 17. He also argues that the plea agreement's language was equivocal and too generic to truly highlight the grave immigration consequences implicated by pleading guilty here, and that other courts have rejected the same plea language for those reasons. *See id*. at 14-15.

Next, Petitioner argues that the Court's questions and explanations during the change of plea colloquy did not cure Mr. Smith's purportedly deficient performance because they too were equivocal, generic, and did not reflect the immigration consequences specific to Petitioner's case. *See id*. at 14-15, 17. The Court's findings in the Report and Recommendation in the underlying criminal case similarly do not cure ineffective assistance of counsel because Petitioner was operating under Mr. Smith's misguidance. *See id*. at 16-17. Petitioner insists that, during the plea colloquy, the Court moved through the boiler-plate script and did not inquire whether Petitioner received immigration advice, nor did it attempt to ensure that his understanding of these circumstances was correct. *See id*. According to Petitioner, Mr. Smith's failure to object on the record is irrelevant to the ineffective assistance of counsel analysis because, *inter alia*, Petitioner failed to recognize that Mr. Smith's misstatements of law led to a series of "inefficacies in the record." *See id*.

Third, Petitioner argues that the prejudice prong of the ineffective assistance of counsel analysis is satisfied here because he has shown a reasonable probability that but for Mr. Smith's defective advice, Petitioner would not have pleaded guilty because (1) he provides compelling affidavit statements that he fled to the United States to escape persecution in Cuba and (2) he chose

4

to plead guilty and serve prison time over serving five years of probation because Mr. Smith told Petitioner that serving a prison sentence would eliminate any immigration consequences. *See id.* at 19. Petitioner argues that taking his chances at trial was not harsher than pleading guilty because pleading guilty would ensure deportation while exercising his right to trial would have at least afforded him the possibility of avoiding deportation if acquitted. *See id.* Petitioner contends that whether his choice was reasonable is immaterial because he has provided statements in an affidavit indicating that under the circumstances, he would have chosen trial for a chance to remain in the United States with his family. *See id.* at 19.

Finally, Petitioner argues that he only desired to plead guilty because Mr. Smith assured him that doing so would avoid long-term immigration consequences. *See id.* at 3, 16. He explains that he had no reason to seek relief earlier because events during his criminal case and following his release played out the way Mr. Smith explained they would, and Petitioner had no reason to question the advice he received before February 2025, when he learned he was ineligible for a green card or status in the United States. *See id.* at 6-7, 18-20.

### 3.   The  Response to the Amended Petition for Writ of Error Coram Nobis

Respondent contends that the Amended Petition is identical to the Original Petition that the Court denied except that it is longer and more hyperbolic, making it more like a motion for reconsideration because Petitioner fails to include any new facts or law. *See* ECF No. [12] at 1; *see also id.* at fn 1. Respondent sets forth two main arguments for why the Amended Petition should be denied: (1) Petitioner's delay in filing prohibits relief and (2) the Amended Petition is disguised as an untimely 28 U.S.C. § 2255 petition, which would have been denied even if timely raised. *See id.* at 6, 9.

Regarding the first argument, Respondent contends that Petitioner was aware that he was subject to deportation from the moment he signed the guilty plea over a decade ago and there was no doubt that he was subject to deportation and/or denaturalization by pleading guilty. *See id*. at 6. According to Respondent, the plea agreement highlighted that Petitioner, by virtue of his knowing plea, could not rely on representation of counsel or the Court regarding the associated immigration consequences. *See id*. Because of this, Respondent asserts that Petitioner could have raised allegations of attorney misguidance on direct appeal and collateral review as early as 2015. *See id*. Moreover, even if Petitioner failed to consider the section of the plea agreement addressing the immigration consequences, the Court reminded him of the severe ramifications during the change-of-plea hearing. *See id*. at 6-7. As an added layer, Respondent argues that the Court ordered Petitioner's surrender to immigration authorities for removal as a special condition of release after serving his prison sentence. *See id*. at 7. Respondent highlights that Petitioner did not object to the findings of fact or the manner in which his sentence was pronounced during the sentencing hearing and the Judgment and Commitment Order also includes the special release condition requiring removal upon completion of Petitioner's sentence. *See id*. Responded notes that Petitioner fails to explain the 10-year delay in requesting relief and that while he alleges having no reason to question Mr. Smith's advice until recently, Petitioner fails to explain how he learned around February 2025 that his conviction would make it impossible to get status in the United States or from whom he gleaned this information. *See id*. at 9.

In its second argument, Respondent contends that the Court's communication during the change-of-plea hearing leaves little doubt that Petitioner knew of the immigration consequences associated with pleading guilty. *See id*. at 9. Moreover, if he believed that his attorney was ineffective by not providing the information necessary to make a knowing and voluntary plea,

Petitioner could have raised this on direct appeal or a motion to vacate. *See id*. at 9-10. Nevertheless, Respondent argues Petitioner's ineffective assistance of counsel claims are cured by his acknowledgement of the immigration consequences in both the plea agreement and plea colloquy. *See id*. at 10. So, according to Respondent, even if Petitioner had timely filed a § 2255 Petition, it would have failed. *See id*. Petitioner never objected before, during, or after sentencing to his knowing, voluntary, and intelligent plea. *See id*. at 11. Respondent maintains that Petitioner only raises this issue now because he is unable to obtain a green card and his failure to offer a sound reason for delaying seeking relief is fatal to the Amended Petition. *See id*. at 11.

### 4. The Reply in Support of Writ of Error Coram Nobis

In the Reply, Petitioner clarifies that the Amended Petition addresses those issues the Court pointed out that the Original Petition ignored. *See* ECF No. [15] at 1. He asserts that the record, specifically the written plea agreement, provides the best evidence substantiating his claims of constitutional error regarding immigration advice. *See id*. at 1. Petitioner reiterates that multiple courts have examined the same plea language and found it to be insufficient, rising to the level of ineffective assistance of counsel. *See id*. at 2. Specifically, under Supreme Court precedent, he argues it was constitutional error to advise Petitioner that his guilty plea "may" carry immigration consequences and that no one, including the Court or Mr. Smith, could make such predictions with certainty regarding immigration consequences because the INA makes clear that conviction of an aggravated felony is a mandatorily deportable offense such that Petitioner cannot dispute it in an immigration proceeding. *See id*. at 3. Petitioner argues that the presentence investigation report and the remarks at sentencing are all irrelevant because he was under the faulty advice of Mr. Smith, who affirmatively advised Petitioner that he would not be subject to immigration consequences. *See id*. at 7. Petitioner argues that the impact of Mr. Smith's defective advice did

not change in light of the plea agreement or plea colloquy where the equivocal language only strengthened his belief that the guilty plea would not impact his ability to remain in the United States. *See id*. at 7-8.  He argues that the Supreme Court standards for ineffective assistance of counsel focus on counsel's advice before pleading guilty. *See id*. at 7.  He reiterates that but for Mr. Smith's misadvice, he would not have pleaded guilty in the first place and the case would have proceeded to trial. *See id*. at 8.

Finally, Petitioner contends that because he has lived in the United States for decades and his life and family were here at the time of his plea, it would have been reasonable for him to reject the plea agreement, as stated in his affidavit. *See id*. at 9-10.   And, for the first time in Reply, Petitioner requested a testimonial hearing "because it is truly a matter of life and death." *See id*. at 10-11.

## I.      LEGAL STANDARDS

### A.  Writ of Coram Nobis

Federal courts possess the authority to issue a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a).  *United States v. Mills*, 221 F.3d 1201, 1203-04 (11th Cir. 2000).  "The writ of error coram nobis is an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." *See id*. at 1203 (citing *United States v. Swindall*, 107 F.3d 831, 834 (11th Cir. 1997)).  Jurisdiction over such petitions is constrained to reviewing errors "of the most fundamental character," but "prejudicial misconduct in the course of the trial, the misbehavior or partiality of jurors, and newly discovered evidence" do not constitute such errors. *See id*. (quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914)).  Coram nobis petitions may be evaluated only when no other remedies are available and the petitioner has presented "sound reasons" for failing to seek relief earlier.  *See id*; *see also United States v.*

*Morgan*, 346 U.S. 502, 512 (1954).

Because "[r]outine grant of coram nobis relief" "would undermine the finality of criminal convictions, a finality achieved in most federal cases either at the time a conviction is affirmed on appeal or at the expiration of the period during which an appeal remains available," courts must exercise "special restraint in the review of collateral attacks on convictions entered pursuant to guilty pleas." *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002). Indeed, the "[f]ailure to appeal such convictions waives challenges based on many types of error in the proceedings which culminated in entry of the plea." *Id.* (citations omitted).

To succeed on a claim for writ of error coram nobis, a petitioner must first show he served his sentence and was not in custody at the time the petition was filed. *Peter*, 310 F.3d at 712. Second, a petitioner must demonstrate that there was no other available and adequate means of relief. *See Mills*, 221 F.3d at 1204. Third, he must show that the alleged error "involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *See Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000) (citation omitted). Finally, a petitioner must "present[] sound reasons for failing to seek relief earlier." *See Mills*, 221 F.3d at 1204 (citation omitted).

### B. Ineffective Assistance of Counsel

A defendant raising ineffective assistance of counsel must demonstrate that (1) "counsel's performance was deficient" and that (2) "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first prong of the *Strickland* analysis, a defendant must show that counsel committed errors so grave they rose to a violation of the Sixth Amendment's guarantee to counsel. *See id*. This generally means showing that "counsel's representation fell below an objective standard of reasonableness." *See id*. (explaining

that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."); *see also Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020).

To satisfy the second *Strickland* prong, a defendant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Padilla v. Kentucky*, 559 U.S. 356, 357 (2010). When a petitioner has pleaded guilty, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Martin*, 949 F.3d at 667 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). And "[u]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *See Strickland*, 466 U.S. at 687. If a petitioner fails to make a sufficient showing under one of the *Strickland* prongs, the Court need not address the other. *See id*. at 697; *see also Kokal v. Sec'y, Dep't of Corr.,* 623 F.3d 1331, 1344 (11th Cir. 2010).

## III.   DISCUSSION

The Court first determines whether Petitioner has satisfied the coram nobis requirements before analyzing Petitioner's ineffective assistance of counsel arguments under *Strickland*. For the reasons detailed below, the Court finds that Petitioner fails to meet both the coram nobis and ineffective assistance of counsel requirements.

### A.  Coram Nobis

As explained above, a petitioner seeking relief under the extraordinary writ of coram nobis must satisfy four requirements. Starting with the first requirement, the Parties do not dispute that Petitioner was out of custody and had concluded his sentence at the time he filed the Original

10

Petition or the Amended Petition, so the Court need not belabor the point.  Accordingly, the Court finds that Petitioner satisfies this requirement.

Turning to the second requirement, the Parties dispute whether there is and was no other available and adequate avenue of relief.  Because coram nobis is "a limited remedy of last resort," *Swindall*, 107 F.3d at 834, it "may not issue when alternative remedies, such as habeas corpus, are available," *United States v. Denedo*, 556 U.S. 904, 911 (2009); *see also Mills*, 221 F.3d at 1204; *Ramdeo v. United States*, 136 F.4th 1348, 1352 (11th Cir. 2025).  Here, Petitioner asserts that he could not have challenged his plea earlier because he was simply unaware of any immigration issues and believed that Mr. Smith properly counseled him, analogizing this scenario to asking a cancer patient why she did not begin treatment prior to a diagnosis.  *See* ECF No. [10] at 7.  According to Petitioner, his claim is substantiated by the fact that he lived a normal post-sentencing life, as Mr. Smith explained he would.  *See id*. at 7-8.  Respondent argues that Petitioner's coram nobis request is disguised as a ten-years-too-late § 2255 petition, which would have been denied anyway.  *See* ECF No. [12] at 9-10.

The Court is not convinced of Petitioner's position.  Petitioner raises a claim based on the involuntariness of his guilty plea, which could have been decided on direct appeal, and an ineffective assistance of counsel claim, which could have been decided through a § 2255 petition. *See Jackson v. United States,* 375 F. App'x 958, 960 (11th Cir. 2010) (explaining that a criminal defendant can challenge the voluntariness of a guilty plea on direct appeal and can raise an ineffective assistance of counsel claim in a § 2255 motion and concluding that the petitioner failed to present sound reasons for failing to seek coram nobis relief earlier when he waited until nine years following his release from prison to do so); *United States v. Stubbs*, No. 2:02-CR-61-FTM-29DNF, 2011 WL 3566839, *3 (M.D. Fla. Aug. 15, 2011) ("Petitioner could have raised the issues

of her mental capacity and the knowing and voluntary nature of her guilty plea in a direct appeal, but failed to do so. Having failed to take advantage of an available remedy, petitioner is precluded from raising this issue in a petition for a writ of coram nobis.").

As the Court details below, at Petitioner's change-of-plea hearing, now-retired Magistrate Judge Chris McAliley explained the ramifications of pleading guilty during the Rule 11 plea colloquy and Petitioner acknowledged his understanding under oath. *See* CR ECF No. [12-1] at 14:8-23. Thus, even assuming Petitioner was unclear about the immigration consequences of pleading guilty at the time he signed the plea agreement, these uncertainties were clarified during the November 10, 2014 plea colloquy. Further, there is no doubt that Petitioner knew that he would be subject to removal proceedings upon his release from prison when Judge Moore told him, at his sentencing, in no uncertain terms that he must surrender to immigration authorities "for removal after imprisonment" — a condition that Judge Moore explained on the record and then incorporated into the Final Judgment as a special condition of supervision. *See* CR ECF No. [237] at 4:11-21 (advising Defendant at the sentencing hearing that "[s]urrendering to immigration for removal after imprisonment" is part of the special conditions of supervised release); *see also* CR ECF No. [188] at 4 ("Surrendering to Immigration for Removal After Imprisonment - At the completion of the defendant's term of imprisonment, the defendant **shall be surrendered** to the custody of the U.S. Immigration and Customs Enforcement **for removal proceedings** consistent with the Immigration and Nationality Act.") (emphasis added). Given Petitioner's knowledge of the immigration consequences of his plea as early as his change-of-plea hearing but no later than the time of his sentencing, he could have appealed the voluntariness of his guilty plea or raised his claim for ineffective assistance of counsel in a timely § 2255 petition, but he did neither.

CASE NO. 25-CV-22495-MOORE/Elfenbein

Turning to the fourth factor[3], whether Petitioner has presented "sound reasons for failing to seek relief earlier," *Mills*, 221 F.3d at 1204, Petitioner simply argues that he was not aware of the adverse immigration consequences until February 2025 so there was no reason to seek earlier relief. The Court finds that Petitioner's stated reasons for seeking delayed coram nobis relief are not sound.

Addressing whether a defendant had sound reasons for his delay in seeking coram nobis relief following faulty advice regarding the immigration consequences of a guilty plea, the Eleventh Circuit explained that the "risk of removal is an adverse consequence of conviction sufficient to create an actual or imminent injury for a case or controversy under Article III." *Gonzalez v. United States*, 981 F.3d 845, 852 (11th Cir. 2020). Indeed, within the coram nobis context, "[t]here [i]s no need for removal proceedings against [a petitioner] to begin or even for immigration officials to serve him with a notice to appear to make his risk of removal a real and concrete injury." *Id*. A criminal defendant begins to suffer that injury, that is, the risk of removal, "as soon as his aggravated felony conviction bec[omes] final." *Id.* Consequently, "[a] defendant seeking to avoid the collateral consequences of a conviction cannot postpone seeking relief until it appears that a collateral consequence is imminent." *Id.* (quoting *Ragbir v. United States*, 950 F.3d 54, 63 (3d Cir. 2020)) (affirming district court's denial of coram nobis petition when the defendant delayed at least 20 months without "sounds reasons" in filing his coram nobis petition after he knew about the deportation consequences of his guilty plea).

Here, as explained above, Petitioner knew about the adverse immigration consequences of his guilty plea as early as his change-of-plea hearing on November 11, 2024 and as late as his sentencing hearing on February 3, 2015. Petitioner began suffering the injury about which he now

---

[3] The Court addresses the third factor out of order below.

complains — the risk of removal — the moment his conviction became final on February 19, 2015 (when the time to file a direct appeal expired). *See Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000) ("A conviction ordinarily becomes final when the opportunity for direct appeal of the judgment of conviction has been exhausted."); Fed. R. App. P. 4(b)(1)A)(i) (explaining that a notice of appeal in a criminal case must be filed within 14 days after the later of the entry of either the judgment or the order being appealed or the filing of the government's notice of appeal). Thus, Petitioner's claim for ineffective assistance of counsel became justiciable on this date — more than ten years before he filed his coram nobis petition. Thus, much like the petitioner in *Gonzalez*, 981 F.3d at 852, Petitioner here fails to provide a sound reason for his decade-long delay in pursuing this claim, precluding coram nobis relief.

Even if the Court agreed with Petitioner's position that there is and was no other available and adequate avenue of relief and accepted that he had sound reasons for failing to raise the issue earlier, he still fails to satisfy the third requirement — that the alleged error involves a matter of fact of the most fundamental character that has not been ruled on and which renders the proceeding itself irregular and invalid. *See Alikhani,* 200 F.3d at 734. Here, this inquiry turns on whether Petitioner succeeds on his ineffective assistance of counsel claim. For the reasons explained below, he cannot.

### B. Ineffective Assistance of Counsel

To recap, Petitioner contends that he would not have pleaded guilty but for his counsel's constitutionally defective advice. *See* ECF No. [10] at 10, 12-16. To succeed on his ineffective assistance of counsel claim, Petitioner must show (1) Mr. Smith's performance was deficient and (2) but for Mr. Smith's deficient performance, there is "there is a reasonable probability that the result of the proceeding would have been different." *See Abuchar v. United States*, No. 10-CR-

20779, 2014 WL 5810688, at *8 (S.D. Fla. Nov. 7, 2014).  For the reasons explained below, even if the Court assumes that Mr. Smith's performance was deficient — a finding it need not reach on this record, Petitioner fails to show there is a reasonable probability the result of the proceeding would have been different, failing to satisfy the second prong of the *Strickland* analysis.  If a petitioner fails to make a sufficient showing under one of the *Strickland* prongs, the Court need not address the other.  *See Kokal,* 623 F.3d at 1344 ("Because a petitioner's failure to show either deficient performance or prejudice is fatal to a *Strickland* claim, a court need not address both *Strickland* prongs if the petitioner fails to satisfy either of them.").  As a result, he fails to establish that Mr. Smith's performance rose to the level of ineffective assistance of counsel.

Focusing on the second *Strickland* prong, the Court must determine whether counsel's deficient performance prejudiced Petitioner.  To do so, Petitioner must show that "there is a reasonable probability that, but for counsel's alleged errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial."  *O'Neil v. United States of America*, No. 09-CR-80105, 2013 WL 12196617, at *8 (S.D. Fla. June 5, 2013), *report and recommendation adopted sub nom*. *O'Neil v. United States*, No. 12-CV-81306, 2013 WL 12195851 (S.D. Fla. Aug. 1, 2013) (quoting *Hill*, 474 U.S. at 58).

Petitioner argues that, but for Mr. Smith's deficient advice regarding deportation consequences, he would have never entered the plea agreement.  ECF No. [10] at 16-21.  He attempts to substantiate these claims through his affidavit, which explains that Petitioner purportedly relayed to Mr. Smith the paramount importance of staying with his family in the United States and his desire to advance defenses against his criminal charges.  *See* ECF No. [10-1] at ¶7.  Petitioner insists that Mr. Smith ignored his ideas or needs and advised him that entering a guilty plea would be the only way to avoid immigration consequences.  *See id*. at ¶¶8, 11-15.

CASE NO. 25-CV-22495-MOORE/Elfenbein

Petitioner's wife's affidavit largely reiterates Petitioner's assertions that (1) remaining in the United States with his family was the most important consideration in pleading guilty; (2) Mr. Smith failed to inform Petitioner of the definite deportation associated with pleading guilty; and (3) but for this misguidance, Petitioner would have rejected the plea and proceeded to trial. *See* ECF No. [10-2] at ¶¶ 2, 6-8, 10-11, 12-15. According to Petitioner, it would have been reasonable for him to proceed to trial under the circumstances because (1) he fled Cuba due to persecution; (2) when given the choice between prison and probation he chose prison because his understanding was it would avoid immigration consequences; and (3) taking a chance at trial would result in less severe consequences than pleading guilty. *See* ECF No. [10] at 19.

The Court is unconvinced. Mere allegations that a petitioner "would have insisted" on proceeding to trial are necessary but insufficient for relief absent some objective evidence that he would not have pleaded guilty and that pressing forward with trial would have been "rational under the circumstances." *See O'Neil*, 2013 WL 12196617 at *8 (citations and quotations omitted). Accordingly, the Court must evaluate the totality of the objective factual circumstances surrounding the plea to assess whether a reasonable probability exists that Petitioner would have, in fact, insisted on trial. *See id.* (explaining that "[i]n many guilty plea cases, this inquiry will closely resemble the inquiry that the court would engage in to determine whether the result would have been different had the petitioner proceeded to trial, and will generally include assessment of matters such as the strength of the prosecution's case, any available defenses, the plea colloquy and negotiations, and the potential sentencing exposure.") (citations omitted); *see also Singleton v. Sec'y of Dept. Of Corr.*, No. 07-CV-1419T33MAP, 2009 WL 975783, at *4 (M.D. Fla. Apr. 9, 2009) (explaining that "[t]he best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a

16

defense that would likely have borne fruit at trial."). Indeed, "the weight of authority holds that a self-serving and conclusory statement by the defendant is insufficient in itself to show prejudice in the context of guilty pleas*." See O'Neil*, 2013 WL 12196617 at *8 (collecting cases); *see e.g., Torres v. United States*, No. 16-CR-20562, 2018 WL 11225716, *5 (S.D. Fla. Mar. 9, 2018*), report and recommendation adopted*, No. 17-CR-20623, 2018 WL 11225714 (S.D. Fla. Apr. 16, 2018); *Castro v. United States*, No. 16-CR-20100, 2017 WL 3835877, *5 (S.D. Fla. Aug. 10, 2017), *report and recommendation adopted*, No. 17-CV-21236, 2017 WL 3835337 (S.D. Fla. Aug. 31, 2017). The affidavits provided by Petitioner and his wife are self-serving and Petitioner fails to point to any contemporaneous objective evidence supporting his claims. By contrast, the record before the Court, including the plea agreement, Rule 11 plea colloquy, the Report and Recommendation, statements made at the sentencing hearing, and both Mr. Smith and Petitioner's lack of objections at sentencing refutes Petitioner's claims.

First, the Court evaluates the plea agreement. The plea agreement states that Petitioner recognizes pleading guilty "may have consequences with respect to the defendant's immigration status if the defendant is not a natural-born citizen of the United States. Under federal law, a broad range of crimes are **removable offenses, including the offense to which the defendant is pleading guilty**." *See* CR ECF No. [94] at ¶6 (emphasis added). Thus, the plea agreement warns Petitioner in no uncertain terms that many federal offenses, including the one to which Petitioner pleaded guilty, provide a basis for deportation. *See id*. While the plea agreement explains that "[r]emoval, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, **including the defendant's attorney** or the Court can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status," this language does not give any indication that Petitioner's

17

immigration consequences may not come to fruition.  *Id.* (emphasis added).  Further, this language cautioned Petitioner that no one, including his lawyer, could predict the impact of his guilty plea on his immigration status, further calling into question Petitioner's position that but for his counsel's advice he would have proceeded to trial.  As a whole, the plea language sufficiently put Petitioner on notice that (1) pleading guilty to a crime may have immigration consequences; (2) the crime to which he was pleading guilty is a removable offense; (3) immigration consequences are an entirely separate proceeding before a different tribunal and neither the Court nor his attorney can predict the outcome; and (4) despite this understanding, Petitioner still choses to plead guilty.

Petitioner now argues that this language was insufficient to put him on notice of mandatory removal based on the INA and that more definite language should have been used.  *See* ECF No. [10] at 12-15.  For example, Petitioner attempts to draw parallels between this case and *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012).  In *Akinsade*, the Fourth Circuit ultimately granted Askinsade coram nobis relief because his attorney advised him twice that pleading guilty to a single embezzlement charge would not subject him to deportation and that he could only be deported if convicted of two felonies, which was incorrect under the law at the time.  *See Akinsade*, 686 F.3d at 250.  Petitioner argues that the *Akinsade* court analyzed the "exact" plea language here, but the plea agreement in *Akinsade* failed to include any language about immigration consequences.  *See id*. at 250.  In contrast, the plea agreement here specifically indicates that the crime to which Petitioner is pleading guilty is a removable offense.  *See* CR ECF No. [94] at ¶6.  While Petitioner argues that the same plea agreement was evaluated by other courts and ultimately rejected, *see* ECF No. [10] at 12-16, the Eleventh Circuit has affirmed the denial of claims for ineffective assistance of counsel involving the same the plea language here regarding immigration consequences along with the petitioner's acknowledgment of understanding such language during

the plea colloquy. *See Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020) (affirming denial of request for evidentiary hearing where plea agreement stated that petitioner "wished to plead guilty 'regardless of any immigration consequences,' including 'automatic removal from the United States[]'" and the petitioner affirmed at the change-of-plea hearing that he discussed the charges with his attorney and was satisfied with counsel's performance). Indeed, Petitioner is not at liberty to ignore the documents he has signed or the instructions the Court provided. *See Kealy v. United States,* 722 F. App'x 938, 946 (11th Cir. 2018).

The Court now evaluates the Rule 11 plea colloquy. Although the plea agreement evidently put Petitioner on notice of immigration consequences, any misunderstanding that remained were cured during the plea colloquy. Indeed, the Court went to great lengths to ensure Petitioner understood the terms of the plea agreement and the resulting consequences during the change-of-plea hearing. For example, the Court reviewed each paragraph of the plea agreement, asking Petitioner whether he understood and agreed to the provisions. *See generally* ECF No. [12-1]. The Court also advised Petitioner in detail about the consequences of pleading guilty, including the waiver of various constitutional rights associated with a guilty plea. *See e.g.*, ECF No. [12-1] at 9:15-10:3, 10:13-11:2, 11:9-22, 12:1-8, 12:11-17, 12:21-13:3, 13:6-16,13:20-14:4, 14:8-23. Regarding immigration consequences specifically, the Court asked Petitioner whether he was a citizen and once he responded that he was not, the Court explained that "[b]y pleading guilty to a felony it is quite possible your immigration status in this country could change." *See id*. at 14:8-12. The Court took it one step further and explained

> [j]ust so you understand, sir, this Court does not decide your immigration status, the Immigration authorities and the United States Government would decide that. What is important, Mr. Valdez, is that you understand by pleading guilty it is entirely possible that once you are found guilty the U.S.

> Immigration authorities may order you removed; and this may cause you to lose all of your rights to be in this country.

*Id*. at 14:22.  When asked if he understood these consequences, Petitioner responded "yes." *Id*. at 14:22-23.  The colloquy does not reflect any confusion by Petitioner as to the potential immigration consequences of a guilty plea.

Moreover, he did not object to the Report and Recommendations finding that the guilty plea "was knowing and voluntary and [had] factual support." *See* CR ECF No. [99] at ¶6.  The Court credits Petitioner's statements at the plea hearing as true, *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("[s]olemn declarations in open court carry a strong presumption of verity"), so Petitioner "bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988); *see also Shell v. United States*, No. 22-10973, 2023 WL 3338631, *1 (11th Cir. May 10, 2023) ("[I]n evaluating whether a plea is knowing and voluntary, we apply 'a strong presumption' that statements made by the defendant during her plea colloquy are true." (*quoting United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)).  Moreover, the special conditions of supervision imposed on Petitioner included, *inter alia*, "[s]urrendering to [i]mmigration for [r]emoval [a]fter [i]mprisonment." *See* CR ECF No. [188] at 4.  The Court reiterated these special conditions of supervision during the sentencing hearing and asked Petitioner whether he or his counsel "object to the findings of fact or the manner in which sentence was pronounced," to which both Petitioner and his counsel responded "[n]o sir." *See* CR ECF No. [237] at 4:11-21, 5:6-10.

As explained above, the only evidence Petitioner sets forth to rebut his prior sworn statements is through his and his wife's self-serving affidavits claiming Petitioner would never have pleaded guilty had he known he would be deported. *See* ECF No. [10-1] at ¶¶ 9-12, 19, 22-24.  These *post hoc* allegations are insufficient to rebut the strong presumption of truth afforded to

his prior statements under oath regarding his understanding of the immigration consequences associated with his guilty plea. *See Torres*, 2018 WL 11225716, at *6 (explaining that "it is well settled that [a] § 2255 [m]ovant cannot overcome a knowing and voluntary plea by simply contradicting such sworn statements in a subsequent collateral proceeding" when evaluating a Rule 11 plea colloquy in a *Strickland* analysis); *MacArthur v. United States,* No. 10-CV-61622, 2013 WL 12373846, *7 (S.D. Fla. Mar. 14, 2013) ("the plea agreement signed by Petitioner, and [] Petitioner's own sworn statements at the plea hearing, conclusively establish that Petitioner's plea was knowing and voluntary."), *report and recommendation adopted*, No. 10-CV-61622, 2013 WL 12373845 (S.D. Fla. June 28, 2013).   Thus, even if the Court concluded that Mr. Smith's performance was deficient, Petitioner has failed to show prejudice as a result of that performance. The record contradicts Petitioner's contentions that but for Mr. Smith's misadvice, Petitioner would have proceeded to trial.  Petitioner's affidavit statements, even taken as true, are not enough to surmount the high burden given the evidence in the record contradicting his assertions.

Finally, the Court concludes its analysis by denying Petitioner's request for an evidentiary hearing, which he made for the first time in the Reply. *See* ECF No. [15] at 10-11.  For the reasons explained above, the Court finds that Petitioner's allegations are affirmatively contradicted by the record, making an evidentiary hearing unnecessary.  *See Martin*, 949 F.3d at 670; *Cedeno-Gonzalez v. United States*, 757 F. App'x 868, 871 (11th Cir. 2018).

In sum, even if the Court assumes Mr. Smith's performance was deficient, Petitioner has not shown he faced any prejudice as a result of that performance; so Petitioner has failed to show that he was denied the effective assistance of counsel.  In so finding, the Court also concludes that

CASE NO. 25-CV-22495-MOORE/Elfenbein

Petitioner fails to satisfy the coram nobis requirements.  Accordingly, the Amended Petition, **ECF No. [10]**, should be **DENIED**.

## IV.  CONCLUSION

For the reasons explained above, I respectfully **RECOMMEND** that the Amended Petition, **ECF No. [10],** be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the Judge Moore of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on July 6, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

22